UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------- X
                                     :

**DEA S. ALLEN-PORTER,**         :

                          :

                **Plaintiff,**     :

                          :            **OPINION AND ORDER**

         - against -          :

                          :            **10 Civ. 9615 (SAS)**

**MICHAEL J. ASTRUE,**        :
**Commissioner of Social Security,**   :

                          :

              **Defendant.**    :
-------------------------------------------------- X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

         Dea S. Allen-Porter, proceeding pro se, brings this action pursuant to

the Social Security Act (the "Act"),[1] seeking judicial review of a final decision by

the Commissioner of Social Security (the "Commissioner") denying her claim for

Supplemental Security Income ("SSI").  This decision became final when the

Appeals Council denied Allen-Porter's request for review on December 7, 2010.[2]

         The Commissioner now moves for judgment on the pleadings

pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, arguing that the

---

[1]     *See* 42 U.S.C. § 405(g).

[2]     *See* Transcript of the Administrative Record ("Tr."), filed as part of
the Commissioner's Answer pursuant to 42 U.S.C. § 405(g), at 1.

decision was supported by substantial evidence.[3]  In opposition, Allen-Porter avers that her mental condition has worsened and that she should be granted benefits because of her inability to leave her home, much less maintain gainful employment.[4]  The Commissioner responds that these new claims are not material to the time period at issue and should not form the basis for remand.[5]  For the following reasons, the Commissioner's motion is granted and his decision denying Allen-Porter SSI benefits is affirmed.

## II.   BACKGROUND

### A.   Procedural History

Allen-Porter filed for SSI benefits on March 19, 2008, alleging that her disability began on July 1, 2006.[6]  The Social Security Administration ("SSA") denied her application on July 1, 2008.[7]  Allen-Porter then requested a hearing, which was held before an Administrative Law Judge ("ALJ") on June 14, 2010.[8]

---

[3]     *See* Defendant's Memorandum of Law in Support of His Motion for Judgment on the Pleadings at 1.

[4]     *See* Plaintiff's Opposition ("Pl. Opp.") at 1-2.

[5]     *See* Reply Memorandum of Law in Further Support of the Commissioner's Motion for Judgment on the Pleadings at 5-6.

[6]     *See* Tr. 91.

[7]     *See id.* 31.

[8]     *See id.* 23.

Allen-Porter had not retained counsel prior to the hearing and waived her right to do so at the hearing.[9]   On September 29, 2010, the ALJ  ruled that Allen-Porter was not disabled under the Act.[10]   The ALJ's decision became the final decision of the Commissioner on December 7, 2010, when the Appeals Council denied Allen-Porter's request for review.

> ### B.     The Administrative Record

The administrative record consists of Allen-Porter's application for benefits, work records, recent medical reports, and hearing testimony.

> #### 1.     Non-Medical Evidence

Allen-Porter, who is thirty-seven years old,[11] alleges that she is disabled because of: (1) her HIV-positive status; (2) intermittent pain in her right knee and right foot; and (3) depression.[12]   Until January 2010, she lived with her husband and three children.[13]   In a form submitted to the SSA in April 2008, Allen-Porter wrote that her daily activities included showering, watching television,

---

[9]      *See id.*

[10]      *See id.* 6.

[11]      *See id.* 24.

[12]      *See id.* 11-12.

[13]      *See id.* 77 (providing household information as of April 2008); Pl. Opp. at 2 (noting that her husband and children moved out in January 2010).

preparing meals, doing laundry, cleaning, shopping, and taking her children to school.  Allen-Porter also indicated that she could handle her own finances.[14]  In addition, she also took care of her children and fed and took her dog for walks.[15] Allen-Porter's husband helped with the cooking and caring for her children and dog because she tended to "become tired easily."[16]  Allen-Porter also indicated that she seldom left her home and that when she did go out, she needed assistance because of her fatigue.[17]  Furthermore, she wrote that she did not socialize with others and no longer took part in activities she formerly enjoyed, such as going to the movies and playing sports.[18]

Allen-Porter did not graduate from high school, but received her GED and attended some college.[19]  From 1994 through 2006, she held several jobs.[20] Her most recent positions were as an accountant for a laundry and a restaurant in 2002, and as a "training specialist" at a rehabilitation center from 2002 through

---

[14]   Tr. 95-98.

[15]   *See id.* 95.

[16]   *Id.* 97.

[17]   *See id.* 99-100.

[18]   *See id.* 98.

[19]   *See id.* 24.

[20]   *See id.* 105.

2006.[21]  In the latter position, she worked with the mentally challenged to teach them "how to cope with daily living."[22]  She was let go because she "had constant doctor appointments" due to her HIV infection.[23]

### 2.  Medical Evidence

Allen-Porter regularly sees her primary care doctor, Dr. Michael Rabinowitz.[24]  She takes several HIV medications prescribed by an infectious disease specialist who found that Allen-Porter displays "excellent viral suppression."[25]  Dr. Rabinowitz's notes from March 2007 reveal no major new issues,[26] but in September 2007, she reported pain in her right foot.[27]  Dr. Rabinowitz referred her to a podiatrist[28] who took x-rays which were negative for fracture and dislocation.  The podiatrist tentatively diagnosed Allen-Porter with tendinitis, gave her an injection to address the pain, fitted her in a protective boot,

---

[21]     *Id.*

[22]     *Id.*; *see also id.* 26.

[23]     *Id.* 104; *see also id.* 27.

[24]     *See id.* 196-199.

[25]     *Id.* 205.

[26]     *See id.* 196.

[27]     *See id.* 190.

[28]     *See id.* 197.

and scheduled a follow-up appointment.[29]  When she saw Dr. Rabinowitz in July 2009, she complained of pain in her right knee.  Dr. Rabionwitz ordered x-rays which showed no abnormalities.[30]  He advised her to use an ACE bandage or similar support to help with the pain.[31]  Finally, when Allen-Porter saw Dr. Rabinowitz in May 2010, she told him that she was experiencing pain in the heel of her right foot.[32]  Once again, x-rays were taken which revealed no heel spurs, although that was the doctor's initial impression of her condition.[33]  The x-rays showed mild bilateral calcaneal enthesiopathy at the Achilles tendon insertion site.[34]  There is no report of any treatment or recommendation.

The remaining medical records come from SSA consultants.  On May 14, 2008, consulting psychologist Dr. Dmitri Bougakov evaluated Allen-Porter and gave her a diagnosis of dysthymic disorder with a prognosis of "[f]air, given the fact that her psychiatric symptomatology is relatively mild."[35]  Dr. Bougakov

---

[29]   *See id.* 190.

[30]   *See id.* 187.

[31]   *See id.* 198.

[32]   *See id.*

[33]   *See id.* 198-199.

[34]   *See id.* 188.

[35]   *Id.* 131.

noted that "[s]he might benefit from some individual psychological therapy."[36]
Based on his assessment, Dr. Bougakov believed that Allen-Porter "can follow and
understand simple directions and instructions, perform simple tasks independently,
maintain attention and concentration, and . . . maintain a regular schedule," as well
as possibly "learn new tasks and perform complex tasks independently."[37]  The
same day, Allen-Porter saw Dr. Barbara Akresh for an internal medical
examination.[38]  Apart from Allen-Porter's self-reported HIV-positive status, Dr.
Akresh found her to be in normal health and gave her a prognosis of "[f]air."[39]

On October 23, 2009, Allen-Porter was evaluated by consulting
psychiatrist Dr. Herb Meadow.[40]  Dr. Meadow's report reveals that Allen-Porter
began therapy to address the trauma of an earlier rape.[41]  Dr. Meadow believed that
Allen-Porter could "perform all tasks necessary for vocational functioning,"
despite her psychiatric problems, which he diagnosed as panic disorder and post-

---

[36]    *Id.*

[37]    *Id.* 130.

[38]    *See id.* 132.

[39]    *Id.* 134.

[40]    *See id.* 162.

[41]    *See id.*

traumatic stress disorder.[42]  On October 28, 2009, Allen-Porter saw another

consulting internal medicine doctor, Dr. Dipti Joshi.[43]  Dr. Joshi's evaluation notes

are consistent with those of the other doctors.  The only limitation he noted was

"mild" in her ability to climb stairs.[44]  His assessment of her physical ability to do

work-related activities was positive despite the knee pain she reported.[45]  Finally,

Dr. Edward Hoffman, a psychologist, saw Allen-Porter on October 30, 2009.[46]  He

diagnosed no cognitive impairments and gave a positive prognosis, but he

recommended continued therapy.[47]  In evaluating Allen-Porter's mental capacity

for work-related activities, Dr. Hoffman found slight impairment in her ability to

make complex decisions and to follow and implement complex instructions, but no

limitations in her ability to interact properly with others in a work setting.[48]

---

[42]     *Id.* 164.

[43]     *See id.* 169.

[44]     *Id.* 171.

[45]     *See id.* 173-178.

[46]     *See id.* 180.

[47]     *See id.* 182.

[48]     *See id.* 184-185.

### 3.   Hearing Testimony

At the hearing, Allen-Porter's testimony generally conformed to what the medical and other evidence revealed.  She briefly described her medical condition as well as her education and work history.[49]  The principal new information that she presented was that she was taking two new drugs for her HIV and had been taking Lexapro for depression "for a little over a month."[50]  Allen-Porter stated that she was seeking work, although it was "not going well," which she attributed to her depression.[51]  According to the decision, Allen-Porter "became tearful while testifying at the hearing."[52]

## C.   The ALJ's Decision

In rendering his decision, the ALJ followed the five-step sequential framework promulgated by the SSA.[53]  In the first step, he found that Allen-Porter had "not engaged in substantial gainful activity" ("SGA") since March 2008.[54]  In

---

[49]     *See id.* 24-27.

[50]     *Id.* 25.

[51]     *Id.* 26.

[52]     *Id.* 15.

[53]     *See* 20 C.F.R. § 416.920.  *See also Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (citing *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)).

[54]     Tr. 11.

the second step, he found her to be suffering from four "severe" impairments: asymptomatic HIV infection, neuritis and tendinitis in her right foot, dysthymic disorder, and post-traumatic stress disorder.[55]  However, in the third step, he found that none of these impairments alone or in combination "meets or medically equals" one of the SSA listed impairments.[56]  In so concluding, the ALJ considered the reports from Allen-Porter's doctors as well as those from the SSA consultants, along with their assessments of how her physical and mental ailments affected her daily life.[57]  In particular, the ALJ evaluated Allen-Porter's mental impairments and found that they did not meet the criteria for establishing disability *per se* under the listing of impairments.[58]

In the fourth step, the ALJ found that Allen-Porter "has the residual functional capacity [("RFC")] to perform a range of light work" despite her physical and mental impairments.[59]  However, he concluded that she could not

---

[55]    *Id.*

[56]    *Id.*

[57]    *See id.* 11-13.

[58]    *See id.* 12-13.  *See also Kohler*, 546 F.3d at 265 (describing the SSA's additional regulations governing evaluations of the severity of mental impairments;  20 C.F.R. § 416.920a).

[59]    Tr. 13.

"perform complex tasks,"[60] including anything like her "past relevant work," which were "jobs requir[ing] mentally complex work activities."[61]  In making this determination, the ALJ carefully reviewed the assessments of doctors who had met with Allen-Porter and found that their opinions supported the view that she could do light work.[62]  He also determined that although she was experiencing the alleged symptoms, her "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with" her RFC.[63]

Because the ALJ found that Allen-Porter could do some work but not her past relevant work, he proceeded to the fifth step, which examines whether, despite a claimant's inability to perform past relevant work, she might be able to do other work, considering her RFC, age, education, and work history.[64]  The ALJ found that the only limitation on Allen-Porter's capacity for doing light work was that she could not handle complex tasks, but he noted that "[t]he basic mental demands of competitive, remunerative, unskilled work" of the kind that exists "in

---

[60]   *Id.*

[61]   *Id.* 16.

[62]   *See id.* 13-16.

[63]   *Id.* 13-14.

[64]   *See id.* 16; 20 C.F.R. § 416.920(g).

11

significant numbers in the national economy" only require the worker "to understand, carry out and remember simple instructions; to respond appropriately to supervision, co-workers, and usual work situations; and, to deal with changes in a routine work setting."[65]  The ALJ's finding that "the vocational base for unskilled light work is not substantially eroded in this instance" in light of Allen-Porter's mental abilities led him to conclude that Allen-Porter "has not been under a disability."[66]

## III.    SUBSTANTIAL EVIDENCE STANDARD

The Commissioner's decision should not be disturbed if "correct legal standards were applied" and "substantial evidence supports the decision."[67] "Substantial evidence is 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[68]  "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, we will not substitute our

---

[65]     Tr. 16-17.

[66]     *Id.* 17.

[67]     *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004).  *Accord Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004).

[68]     *Halloran*, 362 F.3d at 31 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  *Accord Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

judgment for that of the Commissioner."[69]

"To determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn."[70] "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings 'must be given conclusive effect' so long as they are supported by substantial evidence."[71] "If [this Court's] plenary, *de novo* review of the administrative record reveals that substantial evidence supports the ALJ's decision — even if not persuading this Court that it would reach the same conclusion that the ALJ settled upon — then the decision of the ALJ is conclusive."[72]

---

[69]    *Veino*, 312 F.3d at 586.  *Accord Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

[70]    *Snell v. Apfel*, 177 F.3d 128, 132 (2d Cir. 1999).

[71]    *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (quoting *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982)).  *Accord Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990); *Baltal v. Astrue*, No. 07 Civ. 5661, 2008 WL 544584, at *1 (S.D.N.Y. Feb. 27, 2008).

[72]    *Reeder v. Barnhart*, 124 Fed. App'x 58, 59 (2d Cir. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982)).  *Accord Messina v. Astrue*, No. 09 Civ. 2509, 2009 WL 4930811, at *4 (S.D.N.Y. Dec. 21, 2009).

When evaluating the extent of a claimant's impairment, "the ALJ is required to take the claimant's reports of pain and other limitations into account, but is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record."[73]  If the ALJ disbelieves the claimant's subjective complaints, he must provide reasons specific enough "to enable [this Court] to decide whether the determination is supported by substantial evidence."[74]

## IV.   DISCUSSION

Allen-Porter contests the denial of benefits on two bases:  (1) that the ALJ's decision was not based on substantial evidence, and (2) that the Commissioner should consider new evidence of her disability.  There is no merit in either contention.

### A.   The ALJ's Decision Was Based on Substantial Evidence

The ALJ carefully followed the five steps prescribed by the SSA's regulations.  As discussed above, he considered each piece of evidence that was

---

[73]     *Genier*, 606 F.3d at 49 (citing *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979)).  *Accord Meadors v. Astrue*, 370 Fed. App'x 179, 183 (2d Cir. 2010); *Aronis v. Barnhart*, No. 02 Civ. 7660, 2003 WL 22953167, at *7 (S.D.N.Y. Dec. 15, 2003).

[74]     *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).  *Accord Gates v. Astrue*, 338 Fed. App'x 46, 48 (2d Cir. 2009); *Miller v. Barnhart*, No. 02 Civ. 2777, 2003 WL 749374, at *7 (S.D.N.Y. Mar. 4, 2003).

available in the administrative record in rendering his decision.  In the time period

at issue, prior to the ALJ's decision, Allen-Porter met with numerous doctors and

mental health professionals.  They all shared a fairly uniform impression of Allen-

Porter's condition — that despite some limitations, she was doing fairly well and

could handle light, uncomplicated work.

Allen-Porter claimed on her application for SSI that "she fatigued

easily and was unable to walk or stand very long, or sit more than two hours," but

the ALJ found that "these symptoms are not credible to the extent they are

inconsistent with" his assessment of her ability to work.[75]

The ALJ's opinion carefully reviewed the medical records and Allen-

Porter's testimony and self-reported activities, then compared that evidence to her

subjective complaints that her fatigue and depression prevent her from working.

With regard to her HIV condition, he noted that she was doing quite well, with the

infection "stable" enough that she was able to look for work and did not have to

see a specialist very often.[76]  As to her foot and knee problems, he pointed out that

despite the pain she claimed to experience, none of the medical exams revealed

anything severe.  If she did have pain, it did not prevent her from demonstrating a

"full range of motion" upon testing by several doctors who concluded that she had

---

[75]     Tr. 13-14.

[76]     *Id.* 14.

only mild, if any, objective limitations in her physical ability to work.[77]  Similarly, in evaluating her claims of depression, the ALJ noted that every mental health professional with whom Allen-Porter met felt that despite certain issues, such as mild memory problems and flashbacks to being raped as a teenager, she is intelligent and capable of "relat[ing] adequately with others and deal[ing] appropriately with stress" such that she would be able to handle light work.[78]

The ALJ's reasoning supports his conclusion that Allen-Porter's claims of limitation are not credible insofar as they contradict the determination that she would be able to do some forms of light work.  To be sure, some physical symptoms, like her knee and foot pain, may come and go.  Indeed, Allen-Porter admits as much, stating that "[t]he pain in my right knee is not always present. There are times when it hurts to walk and there are times when I can tolerate the pain and continue with normal activities."[79]  However, the ALJ had sufficient evidence from numerous doctors, as well as from Allen-Porter's own testimony, to conclude that her claim that pain and mental health issues would prevent her from doing some light work is not credible.  Because he supported his conclusion with

---

[77]     *Id.*

[78]     *Id.* 15.

[79]     Pl. Opp. at 3.

16

specific and sufficient evidence, I will not disturb it.

### B.   Allen-Porter's "New Evidence" Is Not Sufficient to Remand to the Commissioner

In her opposition to the Commissioner's motion, Allen-Porter describes how her life and mental condition have deteriorated since she applied for benefits.  In particular, she states that her spouse and children moved out in January 2010;[80] her oldest daughter has helped her with basic daily activities since at least February 2011;[81] she completed one remedial class at Bronx Community College, but in April 2011 took a medical leave of absence due to worsened conditions;[82] and she ceased seeing her psychologist and using public transportation in June 2011 because "it is a lot of effort getting out of the bed and traveling" and she "become[s] anxious when around too many people."[83]

The Act provides that a court may remand a case for consideration of additional evidence, "but only upon a showing that there is *new evidence* which is *material* and that there is *good cause* for the failure to incorporate such evidence

---

[80]     *See id.* at 2.

[81]     *See id.*

[82]     *See id.* 1; Pl. Ex. 1 (letter from psychologist to community college).

[83]     Pl. Opp. at 2.

17

into the record in a prior proceeding."[84]   The Second Circuit uses a three-pronged test to evaluate whether the requirements are met.  The test requires a claimant to:

> show that the proffered evidence is (1) "new" and not merely cumulative of what is already in the record, and that it is (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative. . . . Finally, claimant must show (3) good cause for her failure to present the evidence earlier.[85]

The definition of materiality, in turn, requires a three-part assessment:

> New evidence is considered material if (1) it is "relevant to the claimant's condition during the time period for which benefits were denied," (2) it is "probative," and (3) there is "a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently."[86]

Importantly, new evidence post-dating the Commissioner's decision is not necessarily irrelevant.[87]   Some information, especially medical diagnoses, that arose after the decision, may shed essential new light on the claimant's alleged condition at the time of the ALJ's decision.  Such information may be "material"

---

[84]      42 U.S.C. § 405(g) (emphasis added).

[85]      *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988) (citations omitted)).  *Accord Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004); *Gonzalez v. Astrue*, No. 10 Civ. 3667, 2011 WL 4024707, at *12 (S.D.N.Y. Sept. 12, 2011).

[86]      *Williams v. Commissioner of Soc. Sec.*, 236 Fed. App'x 641, 644 (2d Cir. 2007) (quoting *Pollard*, 377 F.3d at 193).

[87]      *See Pollard*, 377 F.3d at 193.

within the meaning of the Act.[88]

Allen-Porter presents only one piece of evidence to support any of the assertions in her opposition to the motion: a letter from her psychologist to the Bronx Community College supporting her request for a medical leave of absence.[89] However, this piece of evidence does not satisfy the definition of materiality.  The letter, dated April 4, 2011, indicates that because of Allen-Porter's "serious symptoms of anxiety and depression" it was "extremely difficult for her to complete not only her school assignments but her daily life tasks as well."[90]  But the letter further specifies that "[h]er symptoms have worsened over the past three months," thereby defining the time period addressed in the letter to the first part of 2011.[91]  The time period considered by the ALJ in denying benefits began and

---

[88]     *See, e.g.*, *Tolany v. Heckler*, 756 F.2d 268, 272 (2d Cir. 1985) (remanding for Secretary to consider medical report supplying new diagnosis).  *See also Tirado*, 842 F.2d at 597 (retrospective diagnosis may reveal depth of illness that was present but not fully appreciated at time of prior hearing, so remand is appropriate).  *Accord Lisa v. Secretary of Dep't of Health & Human Servs. of U.S.*, 940 F.2d 40, 44 (2d Cir. 1991) (remanding for consideration of medical evidence post-dating Secretary's decision); *Fortier v. Astrue*, No. 09 Civ. 993, 2010 WL 1506549, at *20 (S.D.N.Y. Apr. 13, 2010).

[89]     *See* Pl. Ex. 1 (letter from psychologist).

[90]     *Id.*

[91]     *Id.*

19

ended well before this.[92]  Because Allen-Porter's psychologist clearly describes the worsening of her condition as a recent matter, this new evidence cannot shed light on what her condition was at the time of the ALJ's decision.

The other changes in condition that Allen-Porter describes, if they were supported with admissible medical evidence, possibly would have changed the doctors' and psychologists' opinions of her ability to care for herself or to function in a work environment.  However, she provides no evidence of them beyond her own statements in her opposition to the motion.  As noted, most of the developments appear to have taken place after the ALJ's decision.  Without additional documentation that would allow me to make a reasoned determination that such changes actually took place and are material, I cannot take such statements into consideration.

Allen-Porter may of course re-apply for benefits based on her changed condition.  But as to the present action, unless she can provide evidence that clearly sheds light on her condition at the time of the decision denying benefits, the Commissioner was only responsible for the evidence available at that time.  The medical reports and most of Allen-Porter's testimony were consistent with each other and with the profile of a person whose mental and physical conditions at the

---

[92]     *See* Tr. 6-20.

time of diagnosis were not so severe that she could not perform some form of light work of the kind specified in the SSA regulations.  On the basis of this substantial evidence, the Commissioner made the reasonable assessment that Allen-Porter was not disabled and, therefore, not entitled to SSI benefits.

## V.   CONCLUSION

Because the Commissioner's determination was supported by substantial evidence at the time it was made, his motion for judgment on the pleadings is granted.  The Clerk of the Court is directed to close this motion (Docket #14) and this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            December 9, 2011

21

**-Appearances-**

**Plaintiff (Pro Se):**

Dea S. Allen-Porter
2084 Grand Avenue, Apt. #8D
Bronx, NY 10453
(718) 510-6896

**For the Government:**

John E. Gura, Jr.
Assistant U.S. Attorney
U.S. Attorney's Office
86 Chambers Street, 3rd Floor
New York, NY 10007
(212) 637-2712